## 29934. HENDERSON v. THE STATE.

HILL, Justice.

Appellant Leroy Henderson was convicted by a jury of murder and sentenced to life imprisonment. Because some of the enumerations of error are based upon alleged errors in the charge rather than the general grounds, the statement of the facts of this case includes testimony favorable to the appellant for the purpose of determining whether the charge of the court was correct.

While helping the deceased move into a trailer, appellant dropped some of the deceased's belongings. The deceased cursed appellant, threatened to shoot him, and snapped a .38 caliber pistol at him. Saying he would be back, appellant ran home, a distance of about 200 feet. Appellant testified that the reason he ran home was because he was scared, not because he was mad. Appellant got a .22 rifle and returned to the corner of a house about 75 to 80 feet from the trailer, where he waited thinking it was wrong to get the gun and he would try to talk with the deceased.

The deceased and two companions left the trailer approaching the appellant's location. The appellant called the deceased, saying "Hey Charlie," or "Hey Charlie, I told you I would get you." According to appellant, the deceased drew his pistol. Appellant shot the deceased in the forehead from a distance of about 62 feet. Although the deceased's two companions stated they did not see the deceased draw his pistol, a .38 found near the victim's body contained two bullets, one with firing pin indentation.

At least 10 minutes elapsed between the time the

appellant left the trailer and the shooting. Appellant testified that he shot in self-defense.

Appellant has enumerated 5 alleged errors, three of which are considered together here.

1. Appellant contends that the court erred (a) in refusing to allow appellant to testify that the deceased had a reputation for a particular type of violence, to wit: shooting people, (b) in refusing to allow appellant to testify that deceased had shot one man (offered to show appellant's state of mind), and (c) in refusing to allow a witness to testify that a few hours earlier the deceased, in a drunken rage, had shot at the witness (offered to show that the deceased was in a drunken, violent mood.) It does not appear that appellant's proffered testimony that the deceased had shot one man, had reference to the shooting earlier that day involving the witness.

As a general rule, the character of a murder victim is irrelevant and inadmissible in the murder trial. See Code § 38-202. It is unlawful to murder a violent and ferocious person, just as it is unlawful to murder a nonviolent and inoffensive person. *Doyal v. State,* 70 Ga. 134, 148.

Proof of violent and turbulent character of the deceased becomes admissible when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the accused was honestly seeking to defend himself. *Black v. State,* 230 Ga. 614 (3) (198 SE2d 314), and cits.

However, "It is well established by decisions of this court that general character for violence of the deceased can not be established by specific acts." *Black v. State,* (3) supra.

In the case before us, appellant testified that the deceased had a general reputation for violence. He was not permitted to testify that the deceased had a reputation for a particular type of violence, to wit: shooting people.

Appellant acknowledges the rule that the general character for violence of the deceased cannot be proved by specific acts. He contends, however, that this case falls between general reputation and specific acts, and that he should have been permitted to testify as to the deceased's general reputation for a specific type of violence, namely

shooting people, because that type of violence was involved in this case. He contends that proof of a particular type of violence is not proof of specific acts.

The reasons for the rule prohibiting proof of specific acts of violence appear to be at least threefold: (1) A single act may have been exceptional, unusual, and not characteristic and thus a specific act does not necessarily establish one's general character; (2) although the state is bound to foresee that the general character of the deceased may be put in issue, it cannot anticipate and prepare to rebut each and every specific act of violence; and (3) permitting proof of specific acts would multiply the issues, prolong the trial and confuse the jury. *Andrews v. State,* 118 Ga. 1, 3 (43 SE 852).

To have permitted the appellant to testify that the deceased had a general reputation for shooting people would not have been proof of any specific act, would not have required the state to rebut any specific act, and would not have prolonged the trial or confused the jury.

To limit the evidence to proof that the deceased had a general reputation for violence, without permitting proof that he had a reputation for shooting people, leaves the testimony as to violence so general, conclusory and vague as to be of little benefit to the accused. Moreover, the deceased might have had a reputation for stabbing people, in which event such reputation would have been of little or no probative value under the facts of this case.

We conclude that the trial court erred in excluding testimony as to the deceased's general reputation for shooting people.

Appellant next contends that the trial court erred in excluding the testimony of appellant that the deceased had shot one man. Such testimony would violate the rule prohibiting proof of specific acts. However, appellant argues that this testimony was offered for the limited purpose of showing appellant's state of mind.

It appears that testimony as to the general reputation of the deceased, when admissible in a murder case (see above), may come from two sources, the accused or a witness. Where such testimony comes from a witness, there is no requirement that it be shown that the accused knew of the deceased's general reputation for violence.

Assuming that such reputation was not known to the accused, the testimony of the witness is nevertheless admissible to corroborate the testimony of the accused that the deceased was violent on the occasion in question on the theory that a person with a general reputation for violence is more likely to have been violent toward the accused than a person with a gentle reputation. "It is more probable that a person will act in accordance with his character (disposition) than that he will act contrary to it." Green, Georgia Law of Evidence, § 65, p. 160.

On the other hand, where the accused testifies as to the deceased's reputation for violence, and that the accused knew of that reputation at the time in question, such testimony as to reputation both corroborates (as above) and shows the state of mind (reasonable fear) of the accused. See *Dannenberg v. Berkner,* 118 Ga. 885 (2) (45 SE 682).

In the case before us, upon retrial the defendant should be permitted to testify as to his knowledge, at the time in question, of the deceased's reputation for shooting people (if he knew of such reputation at that time) for the purpose of showing his state of mind. To avoid the problems inherent in proof of specific acts of violence (*Andrews v. State,* 118 Ga. 1, supra), he should not be permitted to testify that the deceased shot a man and the defendant knew it. In this way, the interest of the accused (showing reasonable fear) can be protected without violating the prohibition on proof of specific acts.

The trial court did not err in excluding the testimony of the appellant that the deceased had shot one man.

Appellant contends that the trial court erred in excluding the testimony of a witness that a few hours earlier the deceased, in a drunken rage, had shot at the witness. Acknowledging the rule prohibiting proof of specific acts of violence, appellant nevertheless argues that this testimony was offered for the limited purpose of showing that the deceased was in a drunken, violent mood on the afternoon in question.

In our view, the admission of this testimony would have violated the above stated rule and could have prejudiced the jury against the deceased so as to exonerate the appellant for a private execution. As heretofore

stated, it is unlawful to murder a violent and ferocious person just as it is unlawful to murder a nonviolent and inoffensive person.

The deceased made no threat toward appellant during this earlier altercation and the trial court did not err in excluding this testimony of the witness.

2. Appellant contends that the trial court erred in refusing to charge, upon request, the law of voluntary manslaughter, to wit: Code Ann. § 26-1102.

That section provides in pertinent part that "A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . ." That section provides further that ". . . if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder." Although the jury is the judge of whether there was an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, it is a question of law for the courts to determine whether there is slight evidence that the defendant acted as the result of sudden, violent and irresistible passion resulting from serious provocation.

The appellant, who was charged with murder with malice aforethought, not surprisingly testified that he was not mad at the deceased and that he knew he was wrong to get the rifle. However, his attorney considered that the fact that the appellant ran to get the rifle after the deceased had threatened and attempted to shoot the appellant, was some evidence of sudden, violent and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. Accordingly, defense counsel requested a charge on voluntary manslaughter so that the jury could be the judge of whether the appellant was guilty of a crime less than murder.

Although the appellant's testimony may have

excluded voluntary manslaughter as a possible verdict, the evidence as a whole did not. "On the trial of a murder case, if there be any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given the jury." *Banks v. State,* 227 Ga. 578, 580 (182 SE2d 106). The trial court erred in refusing to give the requested charge on voluntary manslaughter.

3. Appellant contends that in connection with the charge on self-defense the trial court erred in charging the jury as follows: "The test is whether in your judgment and whether you think beyond a reasonable doubt that this Defendant was acting under a reasonable fear that his life was in danger at the time he committed the act that he did commit."

Objection was made that the defendant is not required to prove self-defense beyond a reasonable doubt and that the charge had the effect of shifting the burden of proof from the state to the defendant.

The state does not contend that the charge enumerated as error was correct. See Mullaney v. Wilbur, — U. S. — (95 SC 1881, 44 LE2d 508). Instead, the state contends that the charge as a whole was correct and that appellant waived or acquiesced in the charge.

After appellant's objection, the trial judge called for the jury to be brought back for recharge, the portion of the charge objected to was read by the court reporter before the jury returned, and appellant's counsel then said: "Leave it as it is. I except to that." The court said: "Your exception is noted," and canceled the jury's return for recharge. The trial court did not consider the objection to have been waived; the trial court considered that the objection had been made and noted for the record.

Citing *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221), the state urges that a party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.

That rule is inapplicable to the charge of the court (*Sims v. State,* 234 Ga. 177 (214 SE2d 902)), and is particularly inapplicable here because appellant did not ignore the error in the charge.

Considering the charge as a whole, it begins with the

instruction that the burden of proof rests upon the state to prove each element of the offense charged beyond a reasonable doubt, and ends with the instruction that if there is a reasonable doubt as to the guilt of the accused, the jury would have the duty to acquit.

However, if these initial and concluding instructions were found to be controlling, any burden of proof placed upon the defendant in the body of the charge could be held to have been cured. When we consider this charge as a whole, we cannot overlook that portion enumerated as error which put the burden on the appellant to prove beyond a reasonable doubt that he was acting under a reasonable fear that his life was in danger.

The trial court erred in placing this burden upon the appellant. For the reasons stated, the judgment must be reversed.

*Judgment reversed. All the Justices concur.*

SUBMITTED MAY 15, 1975 — DECIDED SEPTEMBER 2, 1975.

*Wynn Pelham,* for appellant.
*Bryant Huff, District Attorney, Dawson Jackson, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley, Deputy Assistant Attorney General,* for appellee.