## 33812. SWETT v. THE STATE.

BOWLES, Justice.

The appellant was indicted for the murder by shooting of his wife, Frances Swett. Upon trial by jury he was found guilty and received a life sentence. He appeals his conviction to this court assigning one enumeration of error, "The trial court erred in failing, upon proper request, to charge the jury with respect to the law of voluntary manslaughter."

The record is clear that the defendant made a timely, written request to charge on the general law of voluntary manslaughter, and the trial court announced its intention to so charge unless objection was made thereto by the state. The state objected and the trial court then determined that the request was not required, and refused the request.

We affirm.

1. We have stated on many occasions that in the trial of a murder case, if there be any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given to the jury. See *Banks v. State,* 227 Ga. 578, 580 (182 SE2d 106) (1971). It has also been stated in *State v. Stonaker,* 236 Ga. 1, 2 (3) (222 SE2d 354) (1976), that, "The state or the accused may, by written application to the trial judge at or before the close of the evidence, request him to charge on lesser crimes that are included in those set forth in the indictment or accusation, and his failure to so charge as requested, if the evidence warrants such requested charge or charges, shall be error."

We also made clear in *Henderson v. State,* 234 Ga. 827, 831 (218 SE2d 612) (1975), followed approvingly by *Gillespie v. State,* 236 Ga. 845 (225 SE2d 296) (1976), that, "Although the jury is the judge of whether there was an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, it is a question of law for the courts to determine whether there is slight evidence that the defendant acted as the result of sudden, violent and irresistible passion resulting from serious provocation."

We must consider then, whether or not the trial judge committed error in refusing the written request to charge in this case, after having heard all of the evidence.

The pertinent evidence showed that the appellant was at his home on the day of the homicide and with the help of two adult relatives was packing belongings in preparation for moving to Florida the following day. The deceased wife returned home at approximately two o'clock p.m. that day with several hamburgers. Appellant did not like that particular brand and threw them over the counter. He had been drinking during the day. One of the relatives, a daughter-in-law, wanted to leave but was asked by the deceased to stay, being told that probably before the day was over, "He'll kill me or I'll kill him," referring to appellant.

The relative and the deceased began to clear out drawers in the bedroom. The relative left the room momentarily and on the way back she heard the deceased say, "Oh, no, Jake, don't." She then heard a gasp and two shots. Upon re-entering the room the deceased was against a dresser, and the appellant was standing near the bed with a gun. The other relatives managed to get the gun away from appellant, and the gun was fired a third time during the melee, but without resulting injury. The expert testimony showed that two bullets entered and exited the deceased's body and were fired at very close range. Appellant was arrested immediately and upon being advised of his rights, made a statement to an investigating officer, in which he said that his wife had closed out their joint bank account; that she had threatened to stay in Georgia unless appellant gave up the custody of his adopted son; that she would not allow him to communicate with his children from his first marriage; that she had turned over all bank and tax papers, credit cards and insurance policies to her lawyer; that she had turned him out of the house in 1976 in cold, rainy weather; that she once damaged his truck with a broom and hit him; that she threatened to call appellant's prospective employers to tell them not to hire appellant; and that she wanted the proceeds from a land sale they were making to be put in her name only. The appellant

further stated that while the parties were packing, he went to the car to get some boxes, and that he put his .38 in one of the boxes. He returned to the bedroom and, when his wife asked him why he was not packed, he shot her twice.

At trial, appellant also testified of many prior grievances against his wife. He claimed that on the night before the shooting his wife had scratched the back of his hand with her fingernails. On the day of the shooting his wife was criticizing him. He admitted in his testimony that he got his gun from the car and shot her twice stating that he knew it was wrong but he "momentarily lost any control." He claimed that he had not planned to kill her when he got the weapon from the car, although it had crossed his mind. He also testified about other occasions in the past when he had had personal difficulty with the deceased, most of which occurred a considerable period of time prior to the homicide.

We have thoroughly studied the entire record and we conclude that the trial court correctly held that the evidence in the case did not warrant a charge on voluntary manslaughter. In order to warrant a charge on voluntary manslaughter, the evidence must not only show an act of violent passion, but also some serious provocation sufficient to excite such passion in a reasonable person. *Hill v. State,* 236 Ga. 703 (224 SE2d 907) (1976); *Reeves v. State,* 234 Ga. 896 (218 SE2d 625) (1975); *Young v. State,* 232 Ga. 285, 290 (206 SE2d 439) (1974); *Williams v. State,* 232 Ga. 203 (206 SE2d 37) (1974).

This court held more than one hundred years ago, and it is applicable today, "It is a mistake to suppose that if one kill [sic] another in the heat of passion, that such killing cannot be murder. Every man is responsible to the community for the control of his temper, and if for some small provocation he permits himself to get into a fury and kills a human being, it is murder. There must be provocation such as justifies the excitement of passion." *Smith v. State,* 49 Ga. 482, 485 (1873).

Appellant testified that he was caused to "lose all of my composure. . .No, it was just the conversation that, that was occurring, the sarcasm and everything that was

occurring or before [sic] the mornings happening, yes sir." He did not deny the shooting, but contended that his mind went blank and that he did not remember anything until after the incident. These circumstances are not sufficient to require a charge on voluntary manslaughter. See *Burger v. State,* 238 Ga. 171, 172 (231 SE2d 772) (1977); *Phillips v. State,* 238 Ga. 497 (233 SE2d 758) (1977); *Reeves v. State,* 234 Ga. 896, supra.

2. Appellant contends that because he introduced evidence of his good character, such evidence may of itself generate a reasonable doubt of guilt. He contends that such evidence may negate malice, thus requiring a charge on voluntary manslaughter. He has cited no authority in support of the latter contention. While we would concede that good character may of itself constitute a defense in behalf of an accused so as to generate reasonable doubt of guilt, we do not approve a legal theory that evidence of good character alone would require the trial court to charge on voluntary manslaughter in a murder case.

*Judgment affirmed. All the Justices concur, except Hall, J., who dissents.*

ARGUED JULY 12, 1978 — DECIDED SEPTEMBER 6, 1978 — REHEARING DENIED SEPTEMBER 26, 1978.

*Rice & Lawrence, George D. Lawrence, Jr.,* for appellant.

*Joseph H. Briley, District Attorney, Sally Rich Jocoy, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Staff Assistant Attorney General,* for appellee.