## 44112. STEWART v. THE STATE.
(356 SE2d 515)

BELL, Justice.

The appellant, Richard C. Stewart, was convicted of the murder of Carlton Bowen and received a life sentence. He now appeals, and we affirm.[1]

---

[1] The crime occurred on January 17, 1986, and Stewart was indicted on April 11, 1986. Stewart was tried from May 27 to June 2, and on June 2 the jury returned its guilty verdict. Stewart filed a motion for new trial on June 11, and the court reporter certified the transcript on July 8, 1986. The hearing on Stewart's motion for new trial was held on September 23, 1986, and Stewart filed his notice of appeal on October 15. The trial court denied Stewart's motion for new trial on November 5, 1986. The case was docketed in this court on November 25, 1986, and submitted for decision on January 9, 1987. We note that the fact that Stewart's

At about 7:00 p.m. on January 17, 1986, the victim and his younger brother, Melvin Bowen, went to the Cat's Den Teen Center in Lithia Springs, Georgia. Upon arriving the victim saw Michelle Mayro in the parking lot of the Cat's Den. Mayro was crossing the parking lot with Stewart and two of his friends, Klenneth Montgomery and Lathan Slaughter. They were going to a convenience store located nearby. The victim, who had previously met Mayro, asked Michelle if she remembered him. Stewart told the victim that Mayro was his girl friend and that he should leave her alone. Mayro, Stewart, Montgomery, and Slaughter then continued on to the convenience store.

Later that evening Stewart and the victim got into a dance contest, during which Stewart accused the victim of "getting in his face." Their friends separated them before an altercation occurred. Stewart left the dance floor and went out to the Cat's Den parking lot, where, according to Mayro and others, Stewart pulled out a knife. At Mayro's urging Stewart put the knife away. Klenneth Montgomery, who also went to the parking lot, testified that Stewart was upset and said "[w]hy don't they leave us alone because if they keep messing with us, somebody might get hurt."

Mayro testified that she and Stewart then went back into the Cat's Den. About an hour later, at approximately 9:15 to 9:30 p.m., Mayro saw Stewart and the victim on the dance floor with about 5 or 6 of the victim's friends standing around them. She heard Stewart tell the victim he was going "to kick his _____," and then saw the victim swing at Stewart. A fight then ensued, and Stewart stabbed the victim with his knife. Although the knife blade was only four inches long, the knife wound extended six inches into the victim and pierced his heart, resulting in his death. The victim was unarmed. Several eyewitnesses testified that they never heard the victim threaten Stewart in any way.

Stewart testified in his own defense at trial. He said that when the victim spoke to Michelle in the parking lot at the Cat's Den, he (Stewart) responded that Michelle was his girl friend. Stewart testified that the victim then cussed him. Stewart added that he was not mad, and that he and his friends ignored the victim and went into the nearby convenience store. According to Stewart, later that evening he and the victim were on the dance floor, and the victim "got in his face." Friends separated them, and Stewart went outside. He acknowledged that he took his knife out, but denied that he told Klenneth Montgomery that "somebody might get hurt" if "they keep mes-

---

notice of appeal was prematurely filed does not operate to defeat his right of appeal. *Gillen v. Bostick*, 234 Ga. 308 (1) (215 SE2d 676) (1975).

sing with us."

Stewart said he went back inside the Cat's Den to the game room. He testified that as he left the game room a person named Joe Davis was walking in front of him, and that the victim knocked Davis down and told Stewart that he was going to kill Stewart. Seven or eight friends of the victim circled Stewart, and the victim then struck him in the head with his fist, causing Stewart to step back. Stewart said that someone then pushed him forward, and he was hit again. He then brought his knife out and swung it in self-defense, striking the victim in the chest. Stewart testified on several occasions that he was not mad at the victim, but acted out of self-defense.

1. We have reviewed the evidence and conclude that it was sufficient to authorize a rational trier of fact to find Stewart guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error Stewart contends that the trial court erred in failing to specifically charge that malice must be proved beyond a reasonable doubt. However, at the outset of its charge and repeatedly during it, the court charged that the state had the burden of proving every element of the crime beyond a reasonable doubt. Viewing the charge on malice in the context of the overall charge to the jury, *Catchings v. State*, 256 Ga. 241 (11) (347 SE2d 572) (1986), we find no error.

3. Stewart contends, in his second enumeration, that the trial court erred in failing to give his requested charge on retreat. We disagree. "The prosecutor did not question [Stewart] as to why he did not quit the scene of the argument. As the issue of retreat was not raised by the evidence, there was no error." *Ward v. State*, 254 Ga. 610 (2) (331 SE2d 521) (1985). Accord *Conklin v. State*, 254 Ga. 558, 567 (5b) (331 SE2d 532) (1985).

4. The court did not err, as argued by Stewart in his third enumeration of error, in refusing to give his requested charge on the law of mutual combat. " 'Mutual combat usually arises when the parties are armed with deadly weapons and mutually agree or intend to fight with them. Mutual combat does not mean a mere fist fight or scuffle. (Cits.)' " *Andrews v. State*, 254 Ga. 498 (3) (330 SE2d 873) (1985) (quoting *Massey v. State*, 251 Ga. 515, 516 (307 SE2d 489) (1983)). The evidence in this case did not warrant a charge on mutual combat, as there was no evidence that the victim was armed with a deadly weapon at the time of the fight, nor, obviously, was there any evidence that Stewart and the victim mutually agreed to fight with deadly weapons.

5. In his fourth enumeration of error Stewart claims that the trial court erred in failing to give his request to charge on voluntary manslaughter. However, because Stewart testified that he was not mad at

the victim and because his defense was justification, not provocation, this issue is controlled adversely to Stewart by *Saylors v. State*, 251 Ga. 735 (2) (309 SE2d 796) (1983).

*Judgment affirmed. All the Justices concur, except Clarke, P. J., and Hunt, J., who dissent.*

HUNT, Justice, dissenting.

I disagree with the majority holding in Division 5 and would reverse because I believe a charge on voluntary manslaughter was required in this case. We have repeatedly held that only slight evidence is necessary to entitle a defendant to such a charge. *Washington v. State*, 249 Ga. 728, 730 (3) (292 SE2d 836) (1982); *Raines v. State*, 247 Ga. 504, 506 (1) (277 SE2d 47) (1981); *Henderson v. State*, 234 Ga. 827, 831 (2) (218 SE2d 612) (1975). Here, the defendant's testimony that the victim knocked down a person walking just in front of the defendant, threatened to kill the defendant, and then struck the defendant in the head immediately before the defendant killed the victim, is at least slight evidence of serious provocation and presents a jury question on the issue of voluntary manslaughter. This is true notwithstanding the defendant's additional testimony that he acted not out of anger but in self-defense. We have long held that even where the defendant's testimony may exclude voluntary manslaughter as a verdict, such a charge is required where it is authorized by the evidence as a whole. *Washington*, supra; *Raines*, supra; *Henderson*, supra. *Saylors v. State,* 251 Ga. 735 (2) (309 SE2d 796) (1983), is cited by the majority for the proposition that where a defendant unequivocally states that he acts only from self-defense and not from anger, he is not entitled to a manslaughter charge. In my judgment, such a rule should not apply where the evidence is in conflict concerning the extent of provocation and passion.[1] Here, such a conflict existed, slight evidence of provocation and passion was present, and the charge on voluntary manslaughter should have been given.

I am authorized to state that Presiding Justice Clarke joins in this dissent.

DECIDED JUNE 4, 1987 —
RECONSIDERATION DENIED JUNE 25, 1987.

*Edwards & Krontz, Kenneth W. Krontz,* for appellant.

---

[1] Unlike an affirmative defense, the concept of voluntary manslaughter as a defense to a murder charge, is not necessarily predicated upon the defendant's version of the crime. He may assert inconsistent defenses. The jury may reject his claim of self-defense, of accident, of lack of anger or fear, and yet properly conclude that the crime was actuated by passion or excitement rather than by malice. The result — a determination that the killing was deliberate, but neither justifiable nor malicious — is a verdict of voluntary manslaughter.

*Frank C. Winn, District Attorney, J. David McDade, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.