## S92A0034. WOODY v. THE STATE.

(418 SE2d 35)

SEARS-COLLINS, Justice.

Clarence Mark Woody fatally shot Thomas O'Neal Purdue after a dispute over drug money. Woody was convicted of felony murder and aggravated assault and now appeals.[1]

On July 6, 1990, Woody and a male friend drove to Purdue's home seeking money that Purdue owed to Woody from the sale of a pound of marijuana. Not finding Purdue at home, Woody and his friend drove to town to search for him but again could not locate him. Later that same evening at approximately 11:00 or 12:00 p.m., Woody and his girl friend returned to Purdue's home. As Woody exited the car, he placed a loaded gun in his pocket. Purdue emerged from his home after Woody knocked on the front door. Woody demanded that his money be repaid and a fight ensued.

Purdue gained the upper hand in the fight and began beating Woody severely. Woody testified that he twice begged for his life before pulling the pistol from his pocket and firing two shots. The first shot missed, but two eyewitnesses testified that Woody shot Purdue in the back as Purdue was running for the door of his home. The victim was fatally wounded, and Woody and his girl friend drove away from the scene of the crime. Woody disposed of the murder weapon by throwing it out of the automobile window on the way home.

The victim died the following day as the result of the gunshot wound.

At trial Woody presented a main defense of self-defense, a secondary defense of justification and made a written request for a jury instruction on voluntary manslaughter. The trial court denied that request. Subsequently, the jury rejected the malice murder charge, and split on the determination of the felony murder charge. The trial court instructed the jury pursuant to *Allen v. United States,* 164 U. S. 492 (17 SC 154, 41 LE 528) (1896), to continue their delibera-

---

[1] The crime occurred on July 6, 1990. Woody was indicted for malice murder, aggravated assault, and felony murder on September 6, 1990. He was acquitted of malice murder, but was found guilty of aggravated assault and felony murder on September 25, 1990. On October 19, 1990, Woody filed a motion for new trial which was denied on June 14, 1991. His notice of appeal was filed on July 12, 1991. The appeal was docketed in this court on October 4, 1991 and was submitted without oral argument on November 15, 1991.

tions, and Woody was convicted of aggravated assault and felony murder.

1. Having reviewed the evidence in the light most favorable to the jury's verdict, we conclude that the evidence put forth at trial was sufficient for a rational trier of fact to have found Woody guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Woody claims that the trial court erred in refusing to charge the jury on voluntary manslaughter.[2] We agree.

In *Washington v. State*, 249 Ga. 728 (292 SE2d 836) (1982), we held that a charge on justification and a charge on voluntary manslaughter are not mutually exclusive, and only slight evidence is necessary to entitle a defendant to a charge on voluntary manslaughter. See also *Stewart v. State*, 257 Ga. 211, 214 (356 SE2d 515) (1987) (Hunt, J. dissenting). A physical beating or fear engendered by danger is sufficient provocation to excite the passion necessary for voluntary manslaughter. *Thomas v. State*, 184 Ga. App. 131 (361 SE2d 21) (1987).

In this case the trial court gave a jury charge on justification, but refused to give a requested jury charge on voluntary manslaughter. The distinguishing characteristic between voluntary manslaughter and justifiable homicide is whether the accused was so influenced and excited that he reacted passionately rather than simply to defend himself. *Gregg v. State*, 233 Ga. 117, 121 (210 SE2d 659) (1974).

The evidence presented in this case was sufficient to warrant a charge on voluntary manslaughter. Eyewitness testimony showed that Purdue had beaten Woody to the point where Woody twice begged for his life. Additionally, the fatal shooting happened after Purdue had retreated but within seconds of the fight and was sufficiently within the nexus of the altercation so that we cannot conclude, as a matter of law, that a reasonable "cooling off" period had occurred. OCGA § 16-5-2.

The State cites *Stewart*, supra, and *Saylors v. State*, 251 Ga. 735 (309 SE2d 796) (1983) for the proposition that a charge on voluntary manslaughter is not available where a defendant's own testimony shows that he was not angry or impassioned when the fatal wound was inflicted and the other evidence presented does not prove otherwise. That rule applies only where the testimony and circumstances are not equivocal. *Washington v. State*, 249 Ga. at 731; *Saylors*, supra at 736-737. Here Woody's testimony and other evidence was sufficient to reasonably support his assertion that the physical beating and his

---

[2] Voluntary manslaughter requires that the defendant act "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a).

attendant fear provoked him into shooting.[3] *Thomas v. State*, supra at 132. Thus, his claim of voluntary manslaughter should have been presented to the jury for their determination.

3. The appellant's remaining enumerations of error are mooted by our holding in Division 1 of this opinion, and therefore will not be addressed by this court.

*Judgment reversed and remanded. All the Justices concur, except Bell, P. J., who concurs in the judgment only; Weltner, C. J., and Hunt, J., who dissent.*

WELTNER, Chief Justice, dissenting.

The majority would reverse the conviction of felony murder in this case and order a new trial for the failure of the trial judge to instruct the jury on the elements of voluntary manslaughter as an included offense to murder.

1. OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; . . .

2. Throughout the trial, Woody's defense was justification in the nature of self-defense. ("I was trying to protect myself.") I reiterate here the testimony as set out in fn. 3 of the majority opinion:

Q: You were on the defense the entire time, weren't you?

A: I was trying to protect myself.

---

[3] Q: "You were on the defense the entire time, weren't you?"
A: "I was trying to protect myself."
Q: "That's all you were doing. I mean that's why you put the loaded gun in your pocket for self-protection. And then after he started beating you, you were just trying to protect yourself?"
A: "Yes, sir."
Q: "And after he got you on the ground, that wasn't enough was it?"
A: "No, sir, it wasn't enough for him. It was enough for me."
Q: "As a matter of fact, you were begging. How many times did you beg for your life that night?"
A: "Twice. . . ."
Q: "[So you were] — fighting for your life?"
A: "No, I couldn't fight."
Q: "I mean, you were struggling for your life weren't you?"
A: "I was struggling trying to get away from him."

Q: That's all you were doing. I mean that's why you put the loaded gun in your pocket for self-protection. And then after he started beating you, you were just trying to protect yourself?

A: Yes, sir.

Q: And after he got you on the ground, that wasn't enough was it?

A: No, sir, it wasn't enough for him. It was enough for me.

Q: As a matter of fact, you were begging. How many times did you beg for your life that night?

A: Twice. . . .

Q: [So you were] — fighting for your life?

A: No, I couldn't fight.

Q: I mean, you were struggling for your life weren't you?

A: I was struggling trying to get away from him.

3. It is clear that the evidence shows nothing that would warrant a finding by the jury that Woody acted "solely as a result of a sudden, violent, and irresistible passion resulting from severe provocation." To the contrary, the evidence shows that Woody was either guilty of murder or entitled to acquittal on self-defense.

4. The evidence *and* Woody's own account of the event demonstrate clearly that the trial court correctly declined to give the requested charge on voluntary manslaughter. See *Swett v. State*, 242 Ga. 228, 230 (248 SE2d 629) (1978); *Saylors v. State*, 251 Ga. 735, 736 (309 SE2d 796) (1983); and *Stewart v. State*, 257 Ga. 211, 213-214 (356 SE2d 515) (1987).

I am authorized to state that Justice Hunt joins in this dissent.

DECIDED JULY 9, 1992.

*Walter B. Harvey*, for appellant.
*Timothy G. Madison, District Attorney, Jeffrey G. Morrow, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.