## S02A1082. GREEN v. THE STATE.
(570 SE2d 207)

SEARS, Presiding Justice.

Bernard Jerome Green is to be tried for murder and related offenses for allegedly robbing a man and a woman with a shotgun in Savannah and then shooting the woman, who died six weeks later in the hospital. This Court granted Green's application for interim review and directed the parties to address the following questions: (1) whether the trial court erred in its order addressing Green's motion to suppress evidence seized by use of an amended warrant and (2) whether the trial court erred in its order denying in part Green's motion to suppress certain portions of his custodial statement. For the reasons that follow, we affirm the trial court's ruling denying Green's motion to suppress evidence obtained with a search warrant, and we reverse the trial court's partial denial of Green's motion to suppress portions of his custodial statements.

### The Search Warrant

1. Detectives prepared an affidavit describing the armed robbery and aggravated battery (which ultimately resulted in the death of the female victim) for which Green is to stand trial and further describing two other armed robberies. The affidavit was presented to a magistrate, who signed the affidavit as indication that the affidavit was the sworn testimony of one of the detectives. That first magistrate also signed an attached search warrant, authorizing a search of Green's residence for the several items specified in the warrant.

After obtaining the warrant, detectives discovered that they had omitted several items they had reason to believe had been taken dur-

ing the three armed robberies addressed in the affidavit, namely, two purses and a Motorola cellular telephone. The detectives attempted to locate the magistrate who had signed the warrant, but, when they were unable to locate him, they contacted a second magistrate at the magistrate's home. This second magistrate, according to the detectives' testimony before the trial court, administered oaths to the detectives, reviewed the original affidavit, discussed the additional items the detectives wished to add to the warrant, allowed the detectives to add a description of those items both to the affidavit and to the warrant, had one of the detectives initial the additions, and then himself initialed the additions.

The trial court erred in several respects in finding that the search warrant in question was not validly amended. First, the trial court placed undue emphasis on the fact that the amendment was not authorized by the same magistrate who authorized the original search warrant. The trial court quoted the Corpus Juris Secundum for the proposition that "[s]earch warrants are of such grave importance that they may be amended, if at all, only by the officer issuing them, and then only in conformity with the affidavits or depositions on which they are based."[1] However, the thrust of that portion of the CJS is merely that the "executing officer" who actually conducts a search should not himself or herself amend or alter the search warrant but, instead, should submit the desired amendment or alteration to a judicial officer for approval. Likewise, the cases cited by the trial court fail to support the proposition that a second magistrate may not, upon receiving a sufficient showing of probable cause by sworn written or oral testimony, authorize an amendment or a correction to a search warrant originally signed by another magistrate.[2] In fact, the trial court's suggestion that a second magistrate should not authorize the amendment or alteration of another magistrate's warrant runs contrary to Georgia case law.[3] Accordingly, we hold that an amendment to a search warrant may be authorized by a second judicial officer upon a proper showing of probable cause.

The trial court held that "the second magistrate [in Green's case]

---

[1] 79 CJS 283, Searches and Seizures, § 188.

[2] See *United States v. Mitchell*, 274 F. 128, 130-131 (N.D. Cal. 1921) ("The warrant could not be amended *by the officers* upon a telephone communication from the commissioner, nor could he [the commissioner/magistrate] himself amend it unless the affidavit itself were so amended as to specify the particular apartment to be searched." (emphasis supplied)); *Delaney v. State*, 135 Ga. App. 612, 613-614 (1) (218 SE2d 318) (1975) ("Once the officers concluded the appellant was to be searched at a later time for a different 'batch' of drugs, they were bound to return to *a* judicial officer to seek a new or modified warrant." (emphasis supplied)).

[3] See *Smith v. State*, 205 Ga. App. 848-849 (2) (424 SE2d 60) (1992) (holding that it was "reasonable and proper" for an officer to locate a second magistrate to change the address of the place to be searched specified in a warrant).

could only approve the amendments to the affidavit and warrant by making a new and independent finding of probable cause as to all matters found in the warrant." This holding was correct in part and excessive in part. A second magistrate approving an amendment to a warrant need not re-authorize the entire warrant but, instead, must simply find sufficient probable cause to authorize the search and seizure described in the amendment itself. Often that distinction will make no difference in examining the propriety of a proposed amendment to a warrant, however, because an amendment to a warrant frequently, as is the case here, will be inextricably linked to the body of the original warrant.

Finally, the trial court's finding that "the record . . . does not support any finding that [the second magistrate] made such an independent determination of probable cause" necessary to authorize the amendment to the warrant was clearly erroneous. The uncontradicted testimony of the two detectives at the motion to suppress hearing showed that the second magistrate read the original affidavit, administered oaths to the detectives, and heard the detectives' testimony showing that the items added to the warrant and affidavit were items taken during two of the three robberies described in the original affidavit. This unrebutted testimony, coupled with the amended affidavit itself, sufficiently showed that the amendment to the warrant was properly authorized by the second magistrate upon a proper showing of probable cause.

Because we find that the search warrant was valid as amended, we need not address Green's contention that the trial court improperly applied the "plain view" exception to the warrant requirement.

### The Statement

2. After his arrest, Green waived his *Miranda*[4] rights and was extensively interrogated. The trial court found that a portion of Green's custodial statement must be suppressed because Green, at a specific point in his interrogation, made an unambiguous assertion of his right to remain silent. Green argues, however, that additional portions of his statement must also be suppressed. Because we find that Green made an unambiguous assertion of his right to remain silent at a point during his custodial statement earlier than that found by the trial court, we reverse the trial court in part and order Green's statement suppressed from the point of that first unambiguous assertion.

A person being subjected to custodial interrogation may at any time express his or her desire to remain silent and, thereby, end the

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

interrogation. Any exercise of this right to silence must be "scrupulously honored."[5] The United States Supreme Court has held that an assertion of the right to *counsel* under the Constitution of the United States must be unambiguous and unequivocal before interrogators are required to stop their questioning,[6] and federal courts have extended that rationale to cases where persons have made assertions of the right to *silence*.[7] This Court previously expressed its approval of a requirement that interrogators strictly limit their questioning to the topic of whether the person being questioned wishes to exercise his or her right to remain silent once that person has made an ambiguous or equivocal statement implicating that right.[8] However, this Court has not yet addressed whether such clarification is a *requirement* in Georgia or is simply the better practice.[9] We need not address that question now, however, because we find that Green's assertion of his right to silence was unambiguous.

Our review of Green's videotaped interrogation reveals that, after an extensive period of interrogation wherein Green steadfastly refused to answer certain questions, a detective informed Green that his interrogation might soon be brought to an end and a heated verbal exchange ensued. The court reporter's transcription of this portion of Green's interrogation reads as follows:

> Detective: Cause after this, Bernard, this big motherfucker over here . . .
> Green: Can kiss my ass.
> Detective: (inaudible) — No, he's not gonna kiss your ass. We're not gonna be able to talk to you anymore.
> Green: That's cool.
> Detective: Listen to me just a minute —
> Green: I don't want to talk (inaudible) —
> Detective: — just hear me out.
> Green: (inaudible)
> Detective: Just hear me out. It's gonna get to a point where you're gonna be going, "Shit, maybe I should have said this, and maybe I should have said that," because, correct me if

---

[5] *Michigan v. Mosley*, 423 U. S. 96, 103 (96 SC 321, 46 LE2d 313) (1975).

[6] *Davis v. United States*, 512 U. S. 452 (114 SC 2350, 129 LE2d 362) (1994).

[7] See *Bui v. DiPaolo*, 170 F3d 232, 239, n. 4 (1st Cir. 1999); *Coleman v. Singletary*, 30 F3d 1420, 1424 (11th Cir. 1994).

[8] *Hatcher v. State*, 259 Ga. 274, 277, n. 2 (379 SE2d 775) (1989) (citing *Christopher v. Florida*, 824 F2d 836, 842 (11th Cir. 1987)).

[9] See *Cook v. State*, 274 Ga. 891, 896 (4) (561 SE2d 407) (2002) (holding that "investigator was authorized to" ask questions designed to clarify whether the suspect wished to exercise his right to remain silent); see also *Lucas v. State*, 273 Ga. 88, 91-93 (538 SE2d 44) (2000) (noting this Court's previous approval of the clarification requirement where ambiguous assertions of the right to silence are made) (Hunstein, J., concurring specially).

I'm right or wrong, everybody thinks about what they said later on, right?

We disagree with the trial court's finding that Green made no assertion of his right to silence in this exchange. Although it was the detective who first broached the subject of ending the interrogation, Green was plainly addressing *that* topic when he said, "That's cool . . . I don't want to talk. . . ." The detective then, apparently recognizing that Green had followed the topic in a direction the detective did not wish to go, repeatedly attempted to interrupt Green's response. Given the detective's apparent desire to prevent Green's ending the interview in response to the detective's own attempt at brinkmanship in threatening to end the interview himself, we can give little weight to the trial court's finding that "the detective and [Green] were speaking simultaneously" and that "the police officers did not even hear [Green's] response."[10] Likewise, we disagree with the trial court's conclusion that the exchange was mere "banter." Our own review of the videotaped exchange[11] leads us to conclude that Green responded to the detective's broaching the subject of ending the interrogation by unambiguously stating that he did not wish for the interrogation to continue. At that point, the interrogation should have ended, and, because it did not, Green's responses from that point on must be suppressed at trial.

*Judgments affirmed in part and reversed in part. All the Justices concur.*

---

[10] Compare *Coleman*, 30 F3d at 1424 ("A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent."); see also *Davis*, 512 U. S. at 459 (holding that a "reasonable police officer" test applies where the right to *counsel* was at issue). While we approve of this language, we also find that, whatever the proper definition of a "reasonable police officer" might be, that phrase must contemplate interrogators who are not actively seeking to interrupt and/or ignore the suspect's assertion of rights.

[11] In reviewing the videotaped exchange, we owe no deference to the trial court's findings of fact, because it was not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence. See *Raheem v. State*, 275 Ga. 87, 93-94 (9) (560 SE2d 680) (2002); *Taylor v. State*, 274 Ga. 269, 272 (1) (553 SE2d 598) (2001); *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) ("[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."); see also *Lyons v. State*, 244 Ga. App. 658, 659 (535 SE2d 841) (2000) ("Where controlling facts are not in dispute, however, such as those facts discernible from a videotape, our review is de novo."); id. at 661-662 (1) (reviewing de novo portions of a videotaped statement and finding that an in-court witness's description of the defendant's tone of voice was inaccurate).

DECIDED SEPTEMBER 16, 2002 —
RECONSIDERATION DENIED OCTOBER 15, 2002.

*Zipperer & Lorberbaum, Steven L. Beauvais, Darden, Burns & Burns, Richard M. Darden,* for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Jon Hope, Assistant District Attorneys, Thurbert E. Baker, Attorney General,* for appellee.