S08A0408. WEBB v. THE STATE.

(663 SE2d 690)

MELTON, Justice.

Following a jury trial, Romell Renath Webb was convicted of malice murder in connection with the stabbing death of James

McMurtry.[1] Webb appeals, contending that the trial court erred in excluding from trial evidence of the victim's alcohol consumption, admitting into evidence Webb's custodial statement, compelling Webb's wife to testify at trial, and failing to properly charge the jury on involuntary manslaughter and other matters. For the reasons that follow, we reverse.

1. Viewed in the light most favorable to the verdict, the record shows that, on February 8, 2005, McMurtry and Jared Sessions were visiting Atlanta and staying at Webb's townhouse. That evening, McMurtry and Sessions were watching television at the house, and they asked Webb if he would share with them some of the rum that they had purchased for Webb earlier in the evening. Webb refused. Webb then stood in front of McMurtry, blocking McMurty's view of the television, and said to McMurtry, "What are you looking at me like that for?" Webb then went to the kitchen, and, when he returned, he again questioned McMurtry about the manner in which McMurtry was looking at him. McMurtry asked Webb to explain to him what he meant. Webb then stabbed McMurtry in the neck and in the chest. Sessions pulled out his cell phone in an attempt to call 911, but Webb demanded the cell phone and Sessions threw the phone to the ground. McMurtry ran out of the house and into the parking lot, and Sessions followed him. McMurtry died from the massive blood loss from his wounds. In Webb's statement to police, he admitted to overreacting during an altercation with McMurtry and stabbing him, but claimed that he had stabbed him in self-defense. Webb also testified at trial that he was defending himself against both McMurtry and Sessions when the stabbing took place, as he was forced to grab a knife after McMurtry suddenly attacked him during an argument in which Webb told McMurtry and Sessions to leave his home.

The evidence was sufficient to enable a rational trier of fact to find Webb guilty of murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Roper v. State,* 281 Ga. 878, 880 (1) (644 SE2d 120) (2007) (witness credibility is for jury to decide, as is the question of justification; therefore, jury is free to reject claim that defendant acted in self-defense); OCGA § 16-5-1.

---

[1] On June 1, 2005, Webb was indicted for malice murder and felony murder (aggravated assault). Following an August 7-11, 2006, jury trial, Webb was found guilty of malice murder and acquitted of felony murder. On August 14, 2006, Webb was sentenced to life imprisonment without the possibility of parole. Webb filed a motion for new trial on August 15, 2006, which the trial court denied on June 22, 2007. White's appeal was docketed in this Court on November 13, 2007, and orally argued on February 12, 2008.

2. Webb argues that the trial court erred in excluding from trial evidence of the victim's alcohol consumption on the day that the victim was stabbed. However, the record reveals that, in Webb's proffer to have such evidence admitted at trial, Webb did not offer any evidence that the victim's alcohol consumption had any effect on his behavior on the day of the stabbing. Webb only offered the testimony of the State's medical examiner, who stated that he could not tell, based on the victim's blood-alcohol content of 0.05, "whether [the victim] was euphoric or aggressive," and that he had no way of knowing the victim's state of mind on the day of the incident. The only thing that the medical examiner could say for certain was that the victim "was not legally intoxicated" based on his blood-alcohol level. Because Webb failed to show "what, if any, effect [alcohol] had on the victim at the time of the [incident with Webb]," the trial court properly excluded evidence of the victim's alcohol use. *Robinson v. State*, 272 Ga. 131, 133 (3) (527 SE2d 845) (2000). Compare *McWilliams v. State*, 280 Ga. 724 (4) (632 SE2d 127) (2006) (trial court erred in excluding evidence of victim's cocaine and alcohol use where victim had history of drug abuse, blood-alcohol content of 0.22 and cocaine metabolites in her blood on day of incident, and medical testimony revealed that combination of cocaine and alcohol produces a compound that causes aggressive behavior).

3. Webb contends that the trial court erred in admitting into evidence his custodial statement to police. Webb claims that, because he had invoked his right to remain silent prior to making the statement, his statement was involuntary. The relevant portion of the transcript of Webb's interview with police shows that, after indicating that he understood his rights, Webb did not sign the portion of the waiver of rights form indicating that he was waiving his rights and that he was voluntarily giving a statement. The following exchange then took place:

> Detective Schindler: If you don't want to talk to me, you don't have to answer any of my questions. But I want to hear your side of the story. But before I can do that, I have to advise you of your rights, okay. If you could just sign right here and date it.
> Webb: I don't want to talk about that.
> Detective Schindler: You don't want to talk about it?
> Detective Starcher: All that [the waiver of rights form] is saying [is] that you understand that.
> Detective Schindler: That's all it's saying[,] that you understand what your rights are. It's not saying that you admit to any crime. It's not saying that you're guilty of anything. All

it simply says is that you understand what your rights are, okay, nothing more than that.

Webb: All right.

Detective Schindler: I just need your signature right there on that line.

Webb: **I'm not willing to make a statement**.

After Webb made this unequivocal assertion of his right to remain silent, all questioning of Webb should have ceased. *Green v. State*, 275 Ga. 569 (2) (570 SE2d 207) (2002). Indeed, "[a] person being subjected to custodial interrogation may at any time express his or her desire to remain silent and, thereby, end the interrogation. Any exercise of this right to silence must be 'scrupulously honored.' " (Punctuation and footnote omitted.) Id. at 571-572 (2). Instead of honoring Webb's right to remain silent by ending the questioning, however, the police responded to Webb's assertion by stating:

Detective Starcher: Listen real quick. Look at me. This [signing of the waiver form] is a formality. Did you go to high school?

Webb: [Nodding head affirmative.]

Detective Starcher: So you understand what we're saying here, right?

Webb: Yes.

Detective Starcher: [The form is] just saying that we did our job by saying that you knew what we were telling you about, all right? Straight?

Webb then put his head down and signed the waiver form, and Detective Schindler then asked him, "Romell, what happened tonight?" Webb then went on to give a full statement to police. Webb's statement, however, should not have been admitted at trial, because, as noted previously, all questioning of Webb should have ceased when he made his unequivocal assertion of his right to remain silent. After Webb exercised his right to remain silent, Webb's "responses from that point on [should have been] suppressed at trial." *Green*, supra, 275 Ga. at 573 (2). However, it is also true that, because Webb's testimony at trial was consistent with his custodial statement, "any error in admitting the statement would have to be deemed harmless." (Citation omitted.) *Larry v. State*, 266 Ga. 284, 286 (2) (a) (466 SE2d 850) (1996).

4. Webb asserts that the trial court erred in refusing to charge the jury on voluntary manslaughter. We agree. "[A] charge on

justification and a charge on voluntary manslaughter are not mutually exclusive, and only slight evidence is necessary to entitle a defendant to a charge on voluntary manslaughter." (Citations omitted.) *Woody v. State*, 262 Ga. 327, 328 (2) (418 SE2d 35) (1992). Here, Webb testified that McMurtry and Sessions were being loud and disrespectful house guests. As a result, he decided to confront the two men and kick them out of his home. During the confrontation, Webb and McMurtry were swearing at each other, and McMurtry shoved Webb into a table while jumping out of his chair towards him. Webb also claimed that Sessions was "jumping at him aggressively" at the same time. Webb felt that, because "there [were] two of them [and] [j]ust one of me . . . they [were] trying to beat my butt [and] fixing to jump me." In order to defend himself against the two attackers, Webb grabbed a knife from the table that he had been shoved into and started swinging it. Further evidence presented to the jury revealed that Webb may have "overreacted" in his response to the argument with McMurtry and Sessions. In light of Webb's testimony that he was arguing with and swearing at Sessions and McMurtry to try and get them to leave his house, that he was shoved into a table, that he may have "overreacted," and that he was outnumbered and felt as though the two men were going to beat him up, the slight evidence necessary to show the provocation and passion that would support a charge on voluntary manslaughter existed here, and Webb was entitled to such a charge. Id. at 328 (2) ("A physical beating or fear engendered by danger is sufficient provocation to excite the passion necessary for voluntary manslaughter") (citation omitted).[2] We therefore reverse Webb's conviction and remand for a new trial. Id.

5. Webb contends that the trial court erroneously allowed the State to question his wife about the events related to the victim's stabbing when his wife had not been informed of her right to assert her marital privilege under OCGA § 24-9-23 (a) ("[h]usband and wife shall be competent but shall not be compellable to give evidence in any criminal proceeding for or against each other"). The record

---

[2] Even though Webb testified on cross-examination that he was never angry at McMurtry or Sessions during his confrontation with them or when he defended himself against them, this does not change the result. *Woody*, supra, 262 Ga. at 328 (2) (The rule "that a charge on voluntary manslaughter is not available where a defendant's own testimony shows that he was not angry or impassioned when the fatal wound was inflicted and the other evidence presented does not prove otherwise . . . applies only where the testimony and circumstances are not equivocal") (citation omitted). Again, even when Webb's testimony on cross-examination is considered, Webb's testimony during direct examination regarding everything that occurred prior to and during the incident with McMurtry and Sessions, and the fact that he may have "overreacted," still provided the slight evidence necessary to support a charge on voluntary manslaughter.

reveals that the State subpoenaed Webb's wife to testify at trial as a rebuttal witness, and, outside of the jury's presence, the trial court informed Webb's wife that she did not have to testify about any communications that she had with her husband. See OCGA § 24-9-21 (communications between husband and wife excluded on grounds of public policy). In response, Webb's wife stated, "I request to use my privilege not to speak of those matters." The trial court, however, made no mention of Webb's wife's privilege under OCGA § 24-9-23. Instead, the trial court informed the State that, despite Webb's wife's assertion of her spousal privilege, the State could still question her "about the events that occurred and things that happened, but [not] about communications between she [sic] and Mr. Webb." The trial court then allowed the State to question Webb's wife in front of the jury over defense counsel's objection that the questioning was inappropriate under OCGA § 24-9-23. During her testimony, Webb's wife stated that, while she was upstairs, she heard Webb and McMurtry arguing and physically fighting in a downstairs room. When she ran to the room where she heard the noises, McMurtry was no longer there, and she heard Webb say that he had over-reacted. The State used this testimony to rebut assertions made by Webb during his testimony that he was only acting in self-defense.

As the trial court concedes in its order on Webb's motion for new trial, Webb's wife did not waive her marital privilege under OCGA § 24-9-23, because she had not been informed of its existence. Moreover, Webb's wife indicated at trial that she wanted to assert her marital privilege, and she further submitted an affidavit for use at the motion for new trial hearing that she would not have testified at all had she not been compelled to do so by the State. Thus, upon the retrial of this case, besides being informed of her marital privilege under OCGA § 24-9-21, Webb's wife should also be fully informed of her marital privilege under OCGA § 24-9-23 so that she can make an informed decision as to whether she would like to waive or assert her marital privilege.

6. Webb urges that the trial court erred in refusing to charge the jury on the defense of accident. However, Webb did not submit a written request for a charge on accident, nor was accident his sole defense, so the trial court did not err in refusing to give this charge. *Campbell v. State*, 207 Ga. App. 902 (3) (429 SE2d 538) (1993).

7. Nor has Webb shown that the trial court erred in failing to give his requested charge on self-defense and the right to stand one's ground. See OCGA § 16-3-23.1 The record reveals that the charge actually given substantially covered the relevant legal principles. *Carter v. State*, 263 Ga. 401 (4) (435 SE2d 42) (1993).

8. Finally, because we cannot say that a new jury in Webb's retrial is likely to ask the same question that prompted the court's

recharge to the jury in Webb's first trial, we need not address Webb's contention that the trial court erred in its recharge to the jury regarding criminal intent. *Maxwell v. State*, 282 Ga. 22 (3) (644 SE2d 822) (2007).

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED JULY 7, 2008.

*Bruce S. Harvey, Jennifer S. Hanson, K. Julie Hojnacki*, for appellant.

*Jewel C. Scott, District Attorney, Marc A. Pilgrim, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.