A02A1485. CAMPBELL v. THE STATE.
(565 SE2d 834)

ELDRIDGE, Judge.

A Clarke County jury found Kenyatta L. Campbell guilty of possession of marijuana with the intent to distribute. He appeals, claiming that, based on *Miranda*,[1] the trial court erred in denying his objection to the admission of an audiotape, recorded without his permission, of statements Campbell made while in the back of a patrol car. Because Campbell's statements were not the result of an in-custody interrogation and permission is not required in order for the police to tape record unsolicited statements made in the back of a patrol car, we affirm.

"This court's responsibility in reviewing a trial court's ruling on a motion to suppress is to assure there was a substantial basis for the decision, and the evidence is construed to uphold the findings and judgment of the trial court."[2] Viewed in such light, the evidence of

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] (Citation and punctuation omitted.) *Jackson v. State*, 252 Ga. App. 268, 269 (2) (555 SE2d 908) (2001).

record shows that Athens-Clarke County Police Officers Hofmann and Clark received explicit information from a reliable informant about drug sales occurring beside a parked, gray Oldsmobile at a known drug sale location on Pauldoe Street in Athens. The officers pulled their individual, marked patrol vehicles behind such car.[3] Campbell and two other men were standing beside the Oldsmobile. At the time Officer Hofmann exited his vehicle, he activated a video-camera attached to his vehicle. The visual field of the camera was trained toward the front of the patrol car. Officer Hofmann's remote audio capability was damaged and did not work. However, a microphone mounted in the interior of the police vehicle was working and able to record conversations.

Immediately upon the officers' arrival, Campbell was detained in the back of Hofmann's patrol car while investigative questioning of the other two men ensued.[4] Thereafter, Hofmann went to the patrol car and asked Campbell if there were any drugs in the Oldsmobile; Campbell answered no. Hofmann then asked for permission to search the vehicle; Campbell refused consent. The audiotape recorded this exchange.

Hofmann and Clark then determined that, under the totality of the circumstances including information from the reliable informant and the corroboration from their investigation, probable cause existed for a warrantless search of the Oldsmobile.[5] Marijuana and $890 in cash were seized during the search. Thereafter, Campbell was arrested.

However, at the time the decision was made to search the car and throughout the course of the search, Campbell — alone in the police vehicle — engaged in a veritable rant that included, inter alia, references to "weed" and an amount thereof; this, before the marijuana was even located by the police. In addition, Campbell made several references to the Oldsmobile as "my car." Campbell's numerous obscene comments, imprecations, insults, and admissions were unsolicited, outside police presence, and recorded on the audiotape.

At trial, both Officer Hofmann and Officer Clark testified that Campbell was not under arrest at the time he was initially detained in the patrol car. Clark testified that he placed Campbell under arrest after the drugs were found, which occurred not long after Campbell was initially detained. Campbell did not testify at trial. No evidence was introduced in contradiction of the officers' testimony.

---

[3] No claim of error is raised with regard to the propriety of the stop and the basis therefor.

[4] No claim of error is raised with regard to the propriety of Campbell's detention in the back of the patrol car.

[5] No claim of error is raised with regard to the propriety of the warrantless search.

Over a pretrial objection that the audiotape was without probative value and that "there were no rights given," the trial court found the tape recording admissible. *Held*:

1. By brief, Campbell concedes that he was not under arrest when he was placed in the back of the patrol car, but maintains that such action placed him in "custody" for purposes of *Miranda*, making Officer Hofmann's inquiry as to whether there were drugs in the Oldsmobile and his request to search an "in-custody interrogation" in violation of *Miranda*. We do not agree.

> In determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v. California*, 511 U. S. 318[, 322] (II) (114 SC 1526, 128 LE2d 293) (1994).[6]

(a) The question is "[whether] a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."[7] The "reasonable person" in this situation "does not mean a person with a guilty conscience who knows as soon as they see the blue light that they will be arrested for matters known to them, but which are not as yet known to [the] police."[8] In that regard, a pre-arrest portion of the audiotape demonstrates that Campbell — apparently talking to himself — did not think his detention in the back of the patrol car was the equivalent of an arrest; instead, Campbell believed that the investigation would result in his release:

> I wasn't in it. I wasn't in it. . . . I wasn't in the car. Why are you going to search a car with nothing in it? Look like a clown, don't you? Look like a real clown. How are you going to search a car with nothing in it? You're stupid. You're a stupid black man, stupid ass. Fuck you going to search a car with nothing in it? I wasn't in it. — I wasn't in the car. You got to let me out. . . . I wasn't even driving. . . . They ain't got no choice but to let me go.

---

[6] (Citations and punctuation omitted.) *Turner v. State*, 233 Ga. App. 413, 415 (1) (a) (504 SE2d 229) (1998).

[7] (Punctuation omitted.) Id.

[8] (Citations and punctuation omitted.) *Johnson v. State*, 234 Ga. App. 116, 119 (2) (506 SE2d 234) (1998).

Campbell apparently held on to this belief until the time of his arrest. Thus, the evidence supports the conclusion that Campbell did not understand the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

(b) Further, this Court has consistently refused to hold that briefly placing a detainee in the back of a patrol car in order to further a legitimate investigation constitutes "custody" for *Miranda* purposes.[9]

> *Terry*[10] carefully notes that the limitations placed upon a brief investigatory stop depended on the facts and circumstances. They would have to be developed on a case-by-case basis, with the touchstone being always the reasonableness of the officer's conduct. Noting that the officer remains particularly vulnerable during such a stop precisely because a full custodial arrest has not been effected, the officer must make quick decisions as to how to protect himself and others from possible danger. In determining whether an officer's conduct during an investigatory stop was proper, the inquiry is not whether the officer could validly have acted similarly but whether under the same circumstances a reasonable officer would have done so.[11]

It is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed.[12] And, here, two officers initially arrived at a known drug sale location in order to conduct a narcotics investigation involving three male suspects, at least one of whom a reliable informant had identified as a drug dealer. Both officers stated that Campbell was not under arrest but was placed in the patrol car to further the investigation. "Under similar factual circumstances, this court has found that placing a person in the rear seat of a patrol car which has no interior door handles and from which there is no exit without the officer's opening the door is not an arrest, but a justifiable momentary detention

---

[9] *Gunn v. State*, 236 Ga. App. 901, 902 (1) (514 SE2d 77) (1999); *Johnson v. State*, supra; *Turner v. State*, supra at 414-415 (1) (a); *Morrissette v. State*, 229 Ga. App. 420, 421-422 (1) (a) (494 SE2d 8) (1997); *Pless v. State*, 218 Ga. App. 603, 605 (2) (462 SE2d 472) (1995); *White v. State*, 208 Ga. App. 885, 888 (2) (432 SE2d 562) (1993); *Goodman v. State*, 210 Ga. App. 369, 370-371 (436 SE2d 85) (1993); *State v. Corbett*, 205 Ga. App. 554, 556 (423 SE2d 38) (1992); *Arena v. State*, 194 Ga. App. 883, 885 (1) (392 SE2d 264) (1990); *Metheny v. State*, 197 Ga. App. 882 (400 SE2d 25) (1990); *Alexander v. State*, 166 Ga. App. 233, 235 (2) (303 SE2d 773) (1983).

[10] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[11] (Citations, punctuation and emphasis omitted.) *Pless v. State*, supra.

[12] *Satterfield v. State*, 251 Ga. App. 141 (553 SE2d 820) (2001).

which is reasonable under the circumstances."[13] Accordingly, Campbell was not in custody at the time he was placed in the back of the patrol car, and Officer Hofmann's legitimate investigative inquiry as to whether there were drugs in the Oldsmobile and his request for consent to search the car cannot be considered an "in-custody interrogation" so as to implicate *Miranda*.

(c) Finally, "[a]lthough *Miranda* makes no exception for exculpatory statements, for the purpose of determining the harmful or harmless nature of the error, whether a defendant's statement is exculpatory or incriminating is material."[14] Here, Campbell's denial that drugs were in the car was consistent with his defense that the drugs were not his and that he had no idea that drugs were in the car. His refusal to permit a search of the car was based on his claim that the vehicle belonged to his mother. This statement, too, was consistent with his defense. Given the exculpatory nature of the two statements at issue and the fact that such statements were consistent with Campbell's defense, "we find no reasonable possibility that admission of the statement[s] contributed to the verdict."[15]

2. "*Miranda* applies only to statements which result from an in-custody interrogation of the accused."[16] Officer Hofmann's request for consent to search the Oldsmobile and his inquiry as to whether there were drugs in the car were the only two investigative questions asked on the lengthy tape at issue. The majority of the tape contains Campbell's sua sponte statements to himself and to others in a crowd at the scene, which statements were made outside the presence of law enforcement. Thus, there was no *Miranda* issue with regard to the admission of these statements.

The only other conversation with a police officer contained on the tape concerned basic biographical booking information of the type which constitutes an exception to *Miranda* and about which Campbell does not complain.[17]

3. We reject Campbell's final contention that the police must obtain permission from a detainee before operating a tape recorder in the back of a police vehicle in order to record unsolicited, voluntary statements made without any engagement by law enforcement. Certainly *Miranda* does not apply because such statements are not the result of an in-custody interrogation.[18] Further there is no reasonable expectation of privacy in the back of a police car so as to make appli-

---

[13] (Citations omitted.) *Pless v. State*, supra.

[14] (Citation and punctuation omitted.) *Metheny v. State*, supra at 887 (1) (d).

[15] Id.

[16] (Citation omitted.) *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000).

[17] See *Pennsylvania v. Muniz*, 496 U. S. 582, 601 (110 SC 2638, 110 LE2d 528) (1990). See also *Franks v. State*, 268 Ga. 238 (486 SE2d 594) (1997).

[18] *Burgeson v. State*, 267 Ga. 102, 106 (3) (c) (475 SE2d 580) (1996).

cable state statutes regulating eavesdropping, surveillance, or the interception of communication which invades the privacy of another. OCGA §§ 16-11-62 through 16-11-67.[19]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MAY 22, 2002.

*William C. Bushnell*, for appellant.

*Kenneth W. Mauldin, District Attorney, Daniel F. Piar, Assistant District Attorney*, for appellee.

---

[19] Id. at 106 (3) (d); *Carr v. State*, 267 Ga. 547, 551 (3) (480 SE2d 583) (1997).