**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**December 14, 2012**

# In the Court of Appeals of Georgia

A12A1649. TEELE v. THE STATE.

BOGGS, Judge.

A jury found Anjoure Charnel Teele guilty of armed robbery. Following the denial of her motion for new trial, Teele appeals, challenging the sufficiency of the evidence. She also contends that the trial court erred by admitting her statement to the police and by excluding testimony regarding her co-defendant's prior sworn statement. For the following reasons, we affirm.

Construed in favor of the verdict, the record shows that on January 6, 2011, a man, later identified as Michael Anthony Williams, approached the victim at a gas station and inquired about purchasing some jewelry from him. The victim did not have the items with him, so he showed Williams a photograph of them and gave him his phone number. That night, Williams called the victim, and they arranged to meet

at an intersection in the victim's neighborhood so that Williams' girlfriend Teele could examine the jewelry.

The victim met Williams and Teele at the arranged location; Teele was driving a red Dodge Neon, with Williams sitting in the front passenger seat. The victim got into the back seat of the vehicle, retrieved a necklace from his backpack, and handed it to Williams. As the victim was returning the necklace to his bag, Williams pointed a gun at him, grabbed his backpack, and threatened to shoot him if he did not "leave everything." The victim got out of the vehicle and started running. Williams got out of the vehicle, walked around to the front of the vehicle, pointed the gun at the victim again, and threatened him. The victim ran faster, hid behind a car, and watched Williams and Teele drive away. According to the victim, Teele sat in the driver's seat of the car during the entire exchange, looking forward and remaining silent. And Teele "appear[ed] to wait for [Williams] so that he could get back in the vehicle."

The victim called police from his cell phone, and the dispatcher sent out the location of the robbery, a description of the two assailants, including their sex and race, as well as a description of a red Dodge Neon. An officer spotted the vehicle with the two occupants matching the dispatch description, and followed it to a parking lot

2

in an apartment complex. After the officer activated his blue lights, the male passenger got out of the car and ran.

Because back-up officers had not yet arrived, the officer pulled out his gun when he approached Teele, who was still seated in the driver's seat. The officer testified that he held her at gunpoint because he was concerned for his safety. She initially refused his commands to get out of the vehicle, but complied after the officer "said it a couple more times." She also refused to get on the ground, claiming that she was pregnant. The officer explained to Teele, "You have to get on the ground[ ] because I don't know if you have a gun. I can't see anything." Teele then complied with the officer's request, and he held "her at gunpoint on the ground until [his] second unit g[o]t there."

Once back-up arrived, the officer handcuffed Teele, stood her up, placed her in the back seat of his patrol car, and advised her that she was being detained for an investigation and that she was not under arrest. He then asked Teele for the name of her passenger, and she indicated that she did not know. The officer told her "she was full of it," to which Teele responded that "she just picked [Williams] up." When Teele refused to give the officer her own name, he told her that "she need[ed] to think about it because she's going to go down for really bad charges," and closed the patrol car

3

door. When the officer returned to the vehicle after an unknown period of time, Teele gave the officer her name and date of birth.[1]

The police then ran Teele's name and birth date through the computer and determined her address, which was an apartment in the same complex. Police knocked on the apartment door, and Williams answered. An officer asked Williams to step outside for questioning, and Williams complied, stating that, "It was me, not her." Williams was then secured in handcuffs.

At some point during the investigation, officers removed Teele's handcuffs and asked her to stand at the back of the patrol car while another officer drove the victim by in a patrol car; the victim identified Teele as the woman in the car during the robbery. Following the victim's positive identification, Teele was arrested.

Teele was charged with armed robbery, and Williams was charged with armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Williams entered a guilty plea and testified on Teele's behalf at trial. Williams stated that he took Teele, who was his live-in girlfriend, to meet the victim, intending to purchase the jewelry from him. According

---

[1]The officer testified that his conversations with Teele took place within five minutes after activating his blue lights.

4

to Williams, the victim "got rude" when he asked for a bill of sale for the necklace, and Williams felt like the victim "was trying to play [him] on the jewelry." Williams then drew his weapon, pointed it at the victim's chest, grabbed the backpack, and the victim fled. Williams testified that Teele had nothing to do with the robbery and "it wasn't planned to go down like that."

1. (a) Teele argues that the evidence was insufficient to enable a rational trier of fact to find her guilty beyond a reasonable doubt of armed robbery. We disagree. When reviewing the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

5

Teele argues that other than driving the vehicle, she took no steps in furtherance of the robbery. She also contends that the robbery was not planned and that she did not know that Williams had a gun. These arguments do not require reversal.

OCGA § 16-2-21 provides: "Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto."[2]

> A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.

(Citation omitted.) *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997).

While Teele may not have had a gun, she drove the car and remained in the vehicle while Williams took the victim's backpack at gunpoint. After the armed robbery had occurred, Teele appeared to wait for Williams to return to the vehicle

---

[2] The jury was charged on this Code section.

6

before driving away. Whether Teele was a party to the crime and aided and abetted Williams was a jury question, and the jury rejected Teele's argument and Williams' testimony that Teele had no knowledge of the robbery and was merely driving the car. See *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006). Under these circumstances, the evidence was sufficient to support the jury's verdict. Id.; *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

(b) Teele also argues that the verdict was "strongly against the weight of the evidence," citing OCGA §§ 5-5-20[3] and 5-5-21.[4] "However, such an argument may only be made to a trial court in a motion for new trial and not to this Court on appeal[,] and we have no discretion to grant a new trial based on such a claim." (Citation and punctuation omitted.) *Overstreet v. State*, 304 Ga. App. 275, 276 (1) (696 SE2d 114) (2010).

---

[3] OCGA § 5-5-20 provides: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."

[4] OCGA § 5-5-21 provides: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

2. Teele contends that the trial court erred by allowing the admission of her statement to police that she had just picked up Williams, because the statement was made while she was in custody and she was not advised of her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

> When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) *Hesrick v. State*, 308 Ga. App. 363 (707 SE2d 574) (2011).

The officer testified that after he advised Teele that she was being detained for an investigation and not under arrest, he asked her for the name of her passenger, and she indicated that she did not know. When the officer told Teele she "was full of it," Teele responded that "she just picked [Williams] up." When Teele refused to give the officer her own name, the officer told her that "she need[ed] to think about it because

8

she's going to go down for really bad charges," and put her in the patrol car.[5] The trial court ruled:

> I think the question was appropriate to the circumstances of trying to - - you're making a stop here, someone is fleeing, the police are trying to catch that person. Who is that guy, is essentially . . . but, who is that guy, is essentially what was asked for purposes of trying to detain him to further investigate. So, you know, regardless of what the defendant said in response to that question, I think the question is proper. Under the circumstances, no *Miranda* is required.

"Voluntary statements made by unwarned suspects in custodial interrogation are presumed to be compulsory and are inadmissible at trial. . . . Therefore, to make a proper case for suppression, [Teele] must show both that [she] was in custody and that [s]he was subjected to interrogation." (Citation and punctuation omitted.) *Waters v. State*, 281 Ga. 119, 121 (4) (636 SE2d 538) (2006), citing *Oregon v. Elstad*, 470 U. S. 298, 307 (105 SC 1285, 84 LE2d 222) (1985).

---

[5]While the officer's testimony at trial concerning this colloquy differed somewhat from his testimony at the *Jackson-Denno* hearing, it does not affect our analysis as we must construe the evidence most favorably to the trial court's findings. See *Souder v. State*, 301 Ga. App. 348, 350 n.3 (687 SE2d 594) (2009), citing, *Bowens v. State*, 276 Ga. App. 520, 521 (623 SE2d 677) (2005).

9

(a) We first address whether Teele was in custody at the time she made her statement.[6] "In determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."(Punctuation omitted.) *State v. Wintker*, 223 Ga. App. 65, 66 (476 SE2d 835) (1996). "Whether a custodial situation exists does not depend upon the subjective views harbored by either the interrogating officers or the person being questioned."(Punctuation omitted.) *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000). Instead, "[t]he only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation." Id.

Here, Teele was approached at gunpoint, ordered to lie on the ground, handcuffed, and placed in the back seat of a marked patrol car. Under these circumstances, "a reasonable person in [Teele's] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the

[6] With regard to the admissibility of Teele's statements, both the State and Teele confine their arguments on appeal to the issue of whether she was in custody at the time she made them. Our review of the transcript, however, shows that the trial court instead concluded that Teele was not interrogated.

10

law associates with formal arrest." *Wintker*, supra, 223 Ga. App. at 67. See also *Waters*, supra, 281 Ga. at 121 (4) (suspect was in custody where he was approached at gunpoint, handcuffed, and placed on ground while guarded by three officers).

(b) Next, we must address whether the officer was interrogating Teele when she made the statement sought to be excluded. "The issue of whether a statement was the result of an interrogation or was instead volunteered is a determination of fact for the trial court, and it will not be disturbed unless it is clearly erroneous." (Citation omitted.) *Velazquez v. State*, 282 Ga. 871, 877 (8) (655 SE2d 806) (2008).

Interrogation is defined as "express questioning by law enforcement officers or 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) *that the police should know are reasonably likely to elicit an incriminating response from the suspect*.'" (Citations, footnote and punctuation omitted; emphasis supplied.) *Cook v. State*, 270 Ga. 820, 825 (2) (514 SE2d 657) (1999). Here, the officer simply asked Teele the name of her passenger in order to obtain the identity of the person the officer observed fleeing the vehicle and who was suspected in an armed robbery. The officer's single, non-accusatory question to Teele was to assist officers' on-the-scene investigation into an armed robbery that had occurred only minutes earlier, and aid in the capture of a potentially armed and

11

dangerous suspect.[7] The fact that Teele gave a non-responsive incriminating statement does not establish that the officer reasonably knew his statement was likely to elicit such a response. See, e. g., *Gonzales v. State*, 277 Ga. App. 362, 365-366 (2) (626 SE2d 569) (2006) (officer would not have known that remark to other officer concerning material on defendant's shoes would elicit incriminating response that accomplice hit victim; response was spontaneous).

The dissent is correct that "[t]he focus of whether 'interrogation' occurs is primarily upon the perceptions of the suspect and not the intent of the officer, although the officer's intent is relevant." (Citation omitted.) *Franks v. State*, 268 Ga. 238, 240 (486 SE2d 594) (1997). "This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of

_____

[7]As an aside, we note that the United States Supreme Court has recently addressed questioning by officers in the context of the Confrontation Clause. *Michigan v. Bryant*, ___ U. S. ___ (131 SC 1143, 179 LE2d 93) (2011). The high court noted, in analyzing the evolution of nontestimonial statements into testimonial, that trial courts can determine when this transition occurs: "[J]ust as, for Fifth Amendment purposes, police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect, . . . trial courts will recognize the point at which, for Sixth Amendment purposes, statements in response to interrogations become testimonial." (Citations and punctuation omitted.) Id. at 1160 (III) (B) n. 10. This comports with our standard of review in which we will reverse the trial court only in a case of clear error.

12

protection against coercive police practices, without regard to objective proof of the underlying intent of the police." (Citations and punctuation omitted.) Id. But while the focus of whether an interrogation occurs is *primarily* upon the perceptions of the suspect, that focus is not determinative. Contrary to the dissent's conclusion, under the totality of the circumstances here, a reasonable person in Teele's position would have believed that the officer's threshold inquiry into the name of her passenger[8] was to assist officers in locating him, not to elicit an incriminating response from her. The officer's question asking the name of Teele's passenger is simply not the type of questioning *Miranda* safeguards were designed to protect against.

The trial court did not clearly err here in concluding that the officer's question to Teele concerning the name of her passenger was asked for the "purposes of trying to detain [Williams] to further investigate" and was not an interrogation. See *Bone v. State*, 311 Ga. App. 390, 392 (1) (715 SE2d 789) (2011) (affirming trial court's denial of motion to suppress where evidence supported trial court's finding of fact that there was no interrogation). We therefore affirm the trial court's ruling as Teele's

---

[8]We note that the officer also asked Teele her name. "A police officer's request for a suspect's name . . . does not constitute custodial interrogation." (Citations and punctuation omitted.) *Nickerson v. State*, 248 Ga. App. 829, 833 (2) (c) (545 SE2d 587) (2001).

13

volunteered statement does not implicate *Miranda.* Cf. *U. S. v. Schulz*, ___ F.3d ___, slip op. at 4-5 (I) (2012 U. S. App. LEXIS 16955) (11th Cir. 2012).

3. In her remaining enumeration, Teele contends that the trial court erred in sustaining the State's objection to trial counsel's planned line of questioning to Williams. Teele planned to point out to the jury that the prosecutor failed to ask Williams questions during his guilty plea hearing that would tend to exonerate her or mitigate her involvement. The State objected that any such questions were not relevant and the trial court agreed.

Even if we were to assume that the trial court somehow erred in not allowing Teele's planned line of questioning, we find no harm here. Williams testified at trial on Teele's behalf and stated that he told police that Teele "didn't have nothing to do with it." Moreover, similar statements were included in a police report admitted into evidence by a stipulation between the parties. This report included Williams' statements that he "did it all," and "[i]t was all me." Teele's claim of error here is therefore without merit. See *Hammond v. State*, 237 Ga. App. 238, 239-240 (3) (515 SE2d 183) (1999) (no harm in excluding evidence that was cumulative of other evidence presented).

14

*Judgment affirmed. Ellington, C. J., Barnes, P. J., Andrews and Dillard, JJ., concur. Phipps, P. J., and Doyle, P. J., dissent.*

A12A1649. TEELE v. THE STATE.

Doyle, Presiding Judge, dissenting.

I respectfully dissent to paragraph (b) of Division 2 because I believe that Teele's in-custody statement that she had just picked up Williams was made in response to interrogation by the officer, and therefore, his failure to advise her of her rights under *Miranda v. Arizona*[1] required suppression of her statement.

"The Fifth Amendment requires the exclusion of any statement made by an accused during custodial interrogation, unless [she] has been advised of [her] rights and has voluntarily waived those rights."[2] In determining whether under the totality of the circumstances an officer's question constitutes an interrogation,

> [r]elevant factors include the context in which the question was asked, the officer's intention in asking the question, and the relationship of the

---

[1] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] *Franks v. State*, 268 Ga. 238, 239 (486 SE2d 594) (1997).

question to the crime. . . . *The focus of whether interrogation occurs is primarily upon the perceptions of the suspect and not the intent of the officer*, although the officer's intent is relevant. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police.[3]

Viewed in favor of the trial court's findings,[4] the record shows that the officer heard a dispatch regarding a robbery, which dispatch included a description of the vehicle and *two* suspects, one male and one female. The officer spotted the vehicle matching the dispatch description, followed the vehicle to a parking lot, and activated his blue lights, at which point the male suspect exited the car and fled. The officer then approached the female driver – Teele – at gunpoint and repeatedly ordered her to exit the car and lie on the ground. Teele initially refused and protested that she was pregnant, but ultimately complied. After backup arrived, the officer handcuffed Teele,

---

[3] (Punctuation and citations omitted; emphasis supplied.) Id. at 240. The officer's question regarding Williams's identity does not fall within the booking exception to the *Miranda* rule set forth in *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (III) (C) (110 SC 2638, 110 LE2d 528) (1990), because the question has no relation to a legitimate administrative need to glean information to book Teele. See *Franks*, 268 Ga. at 241.

[4] See *Bowens v. State*, 276 Ga. App. 520, 521 (623 SE2d 677) (2005).

stood her up, told her she was being detained for investigative purposes, and put her in the back of the patrol car. Then, after first speaking with other members of law enforcement, including directing their search efforts, the officer returned to the patrol car and asked Teele to identify her passenger. Teele responded that she did not know the man. The officer, who testified at the suppression hearing that he thought she was lying, told Teele that "she was full of it" and repeated the question, at which point Teele stated that she "just picked him up."

Under these circumstances, the officer should have known that asking Teele, who matched the description of one of the armed robbers, to identify the other fleeing suspect was likely to elicit an incriminating response, regardless of whether he intended to elicit such information. Furthermore, the information sought was directly related to the armed robbery and Teele's knowledge of the other suspect's identity, thereby establishing her relationship to him. Based on these circumstances, a reasonable person in Teele's situation would have believed she was being interrogated.[5]

Considering the context of the questioning, the officer's intent, and the relationship of the questioning to the crime, I conclude that Teele was "subjected to

---

[5] See *Wells v. State*, 297 Ga. App. 153, 164 (3) (c) (676 SE2d 821) (2009).

3

'interrogation' in violation of [her] Fifth Amendment right against self-incrimination. While [I] do not lightly substitute [my] judgment for that of the trial court, [I] conclude that the trial court's finding otherwise was clearly erroneous."[6]

I further conclude that "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."[7] Although Teele's statement was not a direct confession, her representation to the police that she had just picked up the passenger was contradicted by the evidence at trial that he was her boyfriend. The State argued to the jury that Teele's deceptive statement to the police established that she was a party to the robbery, thereby relying on it to obtain a guilty verdict. Furthermore, the record reflects that the jury deliberated for some time after the jury charges and then elected to return the following day to continue deliberations. The jury also requested direction on several issues, including explanations of reasonable doubt and party to a crime. Thus, I "conclude that there is a reasonable possibility that

---

[6] (Punctuation and footnote omitted.) Id. at 164-165 (3) (c).

[7] (Punctuation omitted.) *Thompson v. State*, 313 Ga. App. 844, 848 (1) (723 SE2d 85) (2012).

the improperly admitted evidence contributed to the jury's verdict,"[8] and I would reverse.

I am authorized to state that Presiding Judge Phipps joins in this dissent.

---

[8] Id. at 849 (1). See also *Vaughn v. State*, 248 Ga. 127, 131-132 (2) (281 SE2d 594) (1981). Compare *Dailey v. State*, 313 Ga. App. 809, 816-817 (1) (723 SE2d 43) (2012) (admission of the defendant's custodial statement was harmless because it was cumulative of other evidence and did not contribute to the verdict).