**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 14, 2014**

# In the Court of Appeals of Georgia

A14A1202. WILLIAMS v. THE STATE.

BOGGS, Judge.

Ricky Williams appeals from his conviction of trafficking in cocaine and contends in his sole enumeration of error that the trial court erred by denying his motion to suppress. We disagree and affirm.

> [T]hree fundamental principles … must be followed when conducting an appellate review of a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous

occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant.

(Citations, punctuation and footnotes omitted.) *Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010). "Where … the issue turns on the question of whether a trial court committed an error of law in granting a motion to suppress, we apply a de novo standard of review. [Cit.]" *State v. Bethel*, 307 Ga. App. 508, 509 (705 SE2d 860) (2010).

So viewed, the evidence shows that a state patrol officer stopped Williams, who was traveling eastbound on I-20 away from Atlanta, after observing Williams in a car with Michigan plates travel 10-12 miles below the speed limit and "go over the white fog line, which would be failure to maintain a lane." The officer stopped Williams because he was concerned that Williams might be intoxicated or fatigued from driving for a long period of time.

After asking for Williams' driver's license and registration, the officer initially asked about how much sleep he had and whether he was too fatigued to drive. Williams informed the officer that he lived in Augusta and produced a Georgia driver's license and a rental car agreement.

Based upon his experience, the officer did not believe that Williams was intoxicated, but was concerned about whether he was too tired to be driving. He therefore asked Williams to step out of the car so that he could assess his level of alertness. The officer testified that he made this assessment by asking Williams questions and "just listened to him answer my questions and how long it took him to process what I was saying." After deciding that Williams was not too fatigued to be driving, the officer returned his driver's license and warned him about his failure to maintain a lane.

The officer testified that Williams was not free to leave at that point even though the failure to maintain a lane portion of the traffic stop had concluded. The officer noticed "pretty close into the traffic stop" that the car had been rented in a female's name for a 24-hour period and that Williams, the sole occupant of the rental car, was not listed as an additional driver. Williams produced no proof at any time that he was authorized to have the car. The officer did not return the rental agreement to Williams, because the officer believed "[t]here was an issue whether he could drive the car off because he wasn't an authorized driver."

Additionally, the officer "became very suspicious [that] Mr. Williams was trafficking in drugs pretty early into the traffic stop." Shortly after stopping Williams,

3

the officer called his partner to come out to the scene, and this officer arrived with his canine dog within two minutes. The officer initiating the stop testified that he did not conclude the traffic portion of the stop until the other officer arrived.

Based upon Williams' vague reasons for driving to and from Atlanta in one day, his failure to put on a coat lying on the front seat despite the cold outside temperature and the fact that he was wearing a short-sleeved shirt, his inability to identify the person he had visited for one day in Atlanta, and his extreme nervousness, the officer told Williams that he thought he was trafficking in drugs and asked to search the car. After Williams declined to give consent for a search, the back-up officer "did a free air search around the outside of the vehicle," and the canine gave a "positive alert." When the officers searched the car, they found 250 grams of cocaine hidden underneath the coat lying on the front seat of the car and placed Williams under arrest. The initial officer testified that "literally from the time of the traffic stop till Mr. Williams is in handcuffs it was five to seven minutes. The traffic stop was pretty brief."

The trial court denied Williams' motion to suppress based on "the totality of the circumstances." Following the presentation of the State's case at trial, Williams renewed his motion to suppress, and a different trial judge also denied the motion. On

4

appeal, Williams contends that the trial court erred, because the officer's continued detention of him after the traffic portion of the stop had concluded was not supported by a reasonable articulable suspicion of criminal activity.

> On a motion to suppress contraband discovered during a traffic stop, the State bears the burden of proving that the search of the car was lawful, and to carry this burden, the State must show that it was lawful to detain [Williams] until the time the drug dog indicated the presence of drugs."

> As our Supreme Court has recently explained, claims that an officer illegally prolonged a detention resulting from a traffic stop generally fall into two categories. The first category involves those cases where the officer allegedly extended the stop "beyond the conclusion of the investigation that warranted the detention in the first place," i.e., whether the officer prolonged the stop after concluding his investigation of the traffic violation. *Rodriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014) (citation omitted). In such cases, courts have "generally concluded" that even a "short prolongation" is "unreasonable unless good cause has appeared in the meantime to justify a continuation of the detention to pursue a different investigation." Id.

> In the second category of cases, the detention is not extended beyond the conclusion of the investigation that originally warranted the detention, but it is claimed that the investigation took too long. In these cases, the courts examine whether the police diligently pursued a means of

5

investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

In either type of case, the touchstone of our analysis is the reasonableness of the investigating officer's conduct, i.e., we ask whether the officer's conduct in prolonging the stop was reasonable given the objective facts known to the officer and the circumstances under which he was working. The question of reasonableness is one of law.

(Citations and punctuation omitted.) *Bodiford v. State*, 328 Ga. App. 258, 261-262 (1) (761 SE2d 818) (2014).

Here, the record shows that while the officer's investigation of Williams' failure to maintain a lane had concluded, the officer had not yet concluded his investigation into whether Williams was entitled to possess and drive the rental car. No evidence shows that the officer had informed Williams that he was free to leave, and it is well-established that a valid traffic stop "includes the time necessary for the officer to check the status of pertinent documents, such as the driver's license, insurance, and vehicle registration. [Cit.]" *Valentine v. State*, 323 Ga. App. 761, 765 (2) ( 748 SE2d 122) (2013).

6

With regard to rental cars, examination of the rental agreements and any ensuing investigation are considered part of the traffic stop. See, e. g., *Culpepper v. State*, 312 Ga. App. 115, 120-121 (717 SE2d 698) (2011) (expired rental car agreement provided additional reason to detain driver); *United States v. Collins*, 2006 U. S. Dist. LEXIS 88631 at *12 (W. D. La. 2006) (officer entitled "to verify . . . that [defendant] was an authorized driver of the car" during traffic stop); *People v. Grear*, 232 AD2d 578, 579 (649 N.Y.S.2d 36) (Sup. Ct. N. Y. 1996) ("Since neither the driver nor the passenger was listed on the rental agreement, it was reasonable for the arresting officer to make further inquiry into the status of the rental car.[Cits.]").[1] "Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." (Citation and punctuation omitted.) *Rodriguez*, supra, 295 Ga. at 371 n. 13 (2) (b). Accordingly, because the officer had not yet informed Williams that he was free to leave with the

_____

[1] Our opinion in *State v. Whitlow*, 253 Ga. App. 149 (558 SE2d 736) (2002) (physical precedent only), does not require a different result, because, in that case, the person renting the car was present as a passenger, and there was no evidence that the officer was continuing to investigate whether the driver was authorized to possess the rental car. Additionally, this opinion has no precedential value as one member of the three-judge panel concurred in the judgment only. See Court of Appeals Rule 33 (a).

rental car or returned the rental agreement, the traffic stop was ongoing at the time the free-air canine search was performed.[2]

"[A]n officer may use a drug sniffing dog to conduct an open-air search of a vehicle's exterior during a valid traffic stop without implicating the Fourth Amendment, if the same is performed without unreasonably extending the stop. [Cit.]" *Moore v. State*, 321 Ga. App. 813, 815 (743 SE2d 486) (2013). Here, the record supports the conclusion that the back-up officer had already arrived with his drug-sniffing dog at the time Williams declined to give consent for a search, and the open-air search did not unreasonably prolong a traffic stop that lasted a total of five to seven minutes. See *Hardaway v. State*, 309 Ga. App. 432, 433-435 (1) (710 SE2d 634) (2011) (stop not unreasonably prolonged where drug dog arrived within 10 minutes of initial stop); *St. Fleur v. State*, 296 Ga. App. 849, 851-852 (1) (676 SE2d 243) (2009) (free air sniff within five minutes of initial stop did not unreasonably prolong the stop); *Wilson v. State*, 293 Ga. App. 136, 138 (666 SE2d 573) (2008)

---

[2] While the initial officer's testimony at trial varied somewhat from his testimony in the motion to suppress hearing, we are required to construe the evidence most favorably to uphold the judgment of the trial court. *Harvey v. State*, 328 Ga. App. 94 (761 SE2d 507) (2014).

8

(because drug dog already present, "any further delay due to retrieving the dog and conducting the walk-around of the vehicle was minimal").

We therefore affirm the trial court's denial of Williams' motion to suppress.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur*.