**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 24, 2015**

# In the Court of Appeals of Georgia

A14A2188. CHAVEZ-ORTEGA v. THE STATE.

RAY, Judge.

Jonathan Chavez-Ortega has been charged by accusation with driving under the influence of alcohol, reckless driving, and racing. We granted Chavez-Ortega's application for interlocutory review of an order denying a motion to suppress his custodial statements. Because we find that Chavez-Ortega was in custody when he invoked his right to remain silent, but that the police nonetheless continued to question him which led to the incriminating evidence which he seeks to suppress, we reverse the trial court's denial of Chavez-Ortega's motion to suppress.

Three fundamental principles must be followed when conducting an appellate review of a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and [her] findings based upon

conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. . . . Where the issue turns on the question of whether a trial court committed an error of law in granting a motion to suppress, we apply a de novo standard of review.

(Citations and punctuation omitted.) *Williams v. State*, 329 Ga. App. 650, 650 (766 SE2d 82) (2014).

The evidence adduced at the suppression hearing shows that Officer Archevald and Officer Denson, with the Cobb County Police Department, observed two vehicles make a turn at a high rate of speed on wet road conditions. Both officers heard tires squealing, and the cars appeared to be racing as they continued to accelerate along Barnes Mill Road. The officers activated their sirens and emergency lights to initiate a traffic stop as both cars turned onto Ven Villa Drive, but only the car driven by Gerald Sanders stopped. The second car continued down the road. Chavez-Ortega was later seen walking back to the traffic stop location. When an officer approached

Chavez-Ortega, he noticed that Chavez-Ortega smelled of alcohol and had watery, bloodshot eyes.

Officer Taylor responded to the scene as backup. He briefly spoke to Chavez-Ortega and asked him where he was coming from. When Chavez-Ortega stated that he was walking from a friend's house, but could not provide details as to where the friend lived, Officer Taylor detained him in handcuffs and placed him in the back of the patrol car while the other two officers were finishing the investigation of Sanders. The State played a video recording of the interior of the patrol car during the suppression hearing. The visual field of the camera was trained toward the front of the patrol car, but the audio portion is audible. Officer Taylor informed Chavez-Ortega that he was "not arrested yet" and that he would be "free to go" if they did not find his car nearby. Officer Denson then questioned Chavez-Ortega about whether he had been drinking, where he had been that evening, and if he had been driving the other car. Chavez-Ortega admitted to drinking at a buddy's house nearby, but stated that he had not been driving. Officer Taylor acknowledged at the suppression hearing that Chavez-Ortega was "detained" and not free to leave once he was handcuffed and placed in the patrol car. Officer Denson then arrived and questioned Chavez-Ortega

3

about where he lived and how old he was. Chavez-Ortega quickly stated that he did not want to talk, and Officer Denson advised him of his *Miranda* rights.

The video recording shows that at the conclusion of the *Miranda* warning, Chavez-Ortega can be heard to tell the officer "I don't want to talk to you." It appears from the transcript that the trial court could not understand this statement during the suppression hearing due to the poor quality of the audio recording.

Officers continued to question Chavez-Ortega about where his car was located. Chavez-Ortega again stated that he had not been driving and that he was coming from a friend's house, but admitted that he was drunk. Once taken outside the patrol car, Chavez-Ortega again stated that he did not want to talk.

During the course of the investigation, Sergeant Paul Rushing, who also responded as backup, located Chavez-Ortega's vehicle up the street. He testified that the driver's floor mat was wet, but that the passenger's side was only dirty, indicating that only one person had been in that car.

After indictment, Chavez-Ortega filed a motion to suppress the statements he had made before and after he was issued a *Miranda* warning. The trial court denied the motion, finding, inter alia, that Chavez-Ortega was not in custody during his questioning, that Officer Denson recited the *Miranda* warning to Chavez-Ortega "as

4

a safety precaution[,]" and that his statements were made voluntarily and without coercion**.**

1. Chavez-Ortega argues that the trial court erroneously determined that he was not "in custody" when he made statements to officers prior to receiving the *Miranda* warnings and that the trial court erred in denying his motion to suppress those statements. We agree.

*"Miranda* warnings are required when a person is interviewed by an investigating officer while in custody." (Citation omitted.) *Lengsfeld v. State*, 324 Ga. App. 775, 781 (1) (b) (751 SE2d 566) (2013). When "determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Citation and punctuation omitted.) *Teele v. State*, 319 Ga. App. 448, 453 (2) (a) (738 SE2d 277) (2012). Whether a suspect is in custody "does not depend upon the subjective views harbored by either the interrogating officers or the person being questioned. Instead, the only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation." (Citations and punctuation omitted.) Id. "A reasonable person is one neither guilty of criminal conduct and thus

5

overly apprehensive nor insensitive to the seriousness of the circumstances." (Punctuation and footnote omitted.) *State v. Mosley*, 321 Ga. App. 236, 238 (739 SE2d 106) (2013).

Here, Officer Taylor approached Chavez-Ortega as soon as he saw him walking down the road and, after questioning Chavez-Ortega about where he was coming from, placed him in handcuffs and put him in the back of the police cruiser. At the suppression hearing, officers even admitted that Chavez-Ortega was "detained" and "basically taken into custody," and was not free to leave when he was in the police cruiser. Although Officer Taylor informed Chavez-Ortega that he was "not arrested yet[,]" we fail to see how a reasonable person in Chavez-Ortega's position would not have considered himself to be under arrest, given that he was handcuffed, placed in the back of a patrol car and informed that officers were searching for his vehicle. See, e. g., *Teele*, supra at 453 (2) (a) (defendant was in custody for *Miranda* purposes when she was approached by officers at gunpoint, ordered to lie on the ground, handcuffed and placed in the backseat of a marked patrol car); *State v. Kendrick*, 309 Ga. App. 870, 871-872 (711 SE2d 420) (2011) (State did not contest that defendant was "in custody" for *Miranda* purposes once he was handcuffed and confined in the backseat of a police cruiser); *Mayberry v. State*, 267 Ga. App. 620, 622 (600 SE2d

6

703) (2004) (defendant's statement was made in custodial circumstances when defendant's car was surrounded by police cruisers, he was handcuffed to an ambulance gurney while officers accompanied him to the hospital, and he was later handcuffed to a stretcher in the hospital). Compare *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (although suspect had been detained pursuant to a traffic stop and was suspected for DUI, he was not in custody for *Miranda* purposes when he was allowed to walk around, was not placed in the back of a police car and was not handcuffed); *Campbell v. State*, 255 Ga. App. 502, 504-505 (1) (a) (565 SE2d 834) (2002) (defendant was not in custody for *Miranda* purposes when he was briefly detained in the back of a patrol car and officers asked if there were drugs in his car when an audio recording of the detention revealed that the defendant believed that the investigation would result in his release and that he would soon regain freedom of movement).

Officers conducting an ordinary traffic stop or arriving at the scene of suspected criminal activity may conduct a "'general on-the-scene investigation,' including making inquiries solely to determine whether there currently is any danger to them or other persons." (Citations omitted.) *State v. Wintker*, 223 Ga. App. 65, 67 (476 SE2d 835) (1996). These inquiries may even require them to temporarily detain

7

someone attempting to leave before the preliminary investigation is completed, and such inquiries and detention "do not trigger the requirements of *Miranda*, unless the questioning is aimed at obtaining information to establish a suspect's guilt." (Citations and punctuation omitted.) Id. Accord *Campbell*, supra at 505-506 (1) (b) (briefly placing a detainee in the back of a patrol car in order to further a legitimate investigation does not constitute "custody" for Miranda purposes). Here, however, the officers' inquiries went beyond a general on-the-scene investigation. The questions posed by officers asking Chavez-Ortega where he had been, if he had been drinking, and if he had been driving the other speeding car, were "clearly aimed at obtaining information to establish [his] guilt." (Punctuation and citation omitted.) *Wintker*, supra at 68-69. Officer Taylor's question to Chavez-Ortega if he was the driver of the other car is clearly directed at eliciting information to establish guilt. See Id. (although told she was not under arrest, suspect was in custody for *Miranda* purposes when she was separated from other passengers, confined to the back of a locked patrol car, observed a police dog and his handler come to the scene and was questioned about matters aimed at establishing her guilt).

Accordingly, we find that the trial court erred in finding that statements Chavez-Ortega made to officers were made in noncustodial circumstances. Such statements are inadmissible and must be excluded at trial. See *McDougal v. State*, 277 Ga. 493, 498 (1) (A) (591 SE2d 788) (2004).

2. Chavez-Ortega next asserts that the trial court erred in denying his motion to suppress the statements he made to Officer Denson after he had been read his *Miranda* rights. We agree.

"An arrested person has the constitutional right to remain silent, but he must clearly assert his desire to remain silent to exercise that right. Police must honor an arrested person's right to remain silent if the person clearly and unambiguously states that he wants to end questioning." (Citations omitted.) *Ridley v. State*, 290 Ga. 798, 802 (4) (725 SE2d 223) (2012).

Here, our review of the audio portion of Chavez-Ortega's interrogation reveals that he clearly informed Officer Denson that he did not wish to speak to him *prior* to

9

being read his *Miranda* rights, and that he stated that he did not want to talk to the officers immediately *after* being informed of his *Miranda* rights.[1]

It is clear that the statements made by Chavez-Ortega after being read his *Miranda* rights resulted from direct interrogation by the officer, and were not the spontaneous and unsolicited statements of a person who was anxious to explain. Directly after reading the *Miranda* warning, and after Chavez-Ortega had twice informed the office that he did not wish to speak to him, Officer Denson began to ask Chavez-Ortega questions. However, after Chavez-Ortega made these unequivocal assertions of his right to remain silent, all questioning of him should have ceased. *Green,* supra at 571-572 (2). Indeed, "[a] person being subjected to custodial interrogation may at any time express his or her desire to remain silent and, thereby, end the interrogation. Any exercise of this right to silence must be 'scrupulously honored.'" (Punctuation and footnote omitted.) Id. at 571-572 (2). Instead of honoring

---

[1] We again note that it appears that, due to the poor quality of the recording, the trial court was unable to hear Chavez-Ortega's post-*Miranda* statement that he did not wish to speak with the officer. In reviewing the videotaped interview, however, this Court owes no deference to the trial court's findings of fact "because it was not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence." (Citations omitted.) *Green v. State*, 275 Ga. 569, 573 (2) n. 11 (570 SE2d 207) (2002). Accord *Lyons v. State*, 244 Ga. App. 658, 661-662 (1) (535 SE2d 841) (2000).

Chavez-Ortega's right to remain silent, Officer Denson continued to question him. Accordingly, any responses by Chavez-Ortega after he stated his wished to remain silent should have been suppressed at trial. See *Webb v. State*, 284 Ga. 122, 125 (3) (663 SE2d 690) (2008).

*Judgment reversed. Andrews, P. J., and McFadden, J., concur.*